**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

FLORA DELPHINE LONG

       Debtor

THE PEOPLES BANK

       Plaintiff

v.

EASTERN SAVINGS BANK

       Defendant

Case No. 09-34469

Adv. Proc. No. 10-3003

**M E M O R A N D U M**

**APPEARANCES:**    GENTRY, TIPTON & McLEMORE, P.C.
    Greg D. Meadows, Esq.
    900 South Gay Street
    Suite 2300
    Knoxville, Tennessee 37923
    Attorneys for Plaintiff

    BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
    David E. Fielder, Esq.
    Robert R. Carl, Esq.
    Kyle A. Baisley, Esq.
    265 Brookview Centre Way
    Suite 600
    Knoxville, Tennessee 37919
    Attorneys for Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff, The Peoples Bank, on January 11, 2010, seeking a determination by the court that the portion of the claim filed by the Defendant, Eastern Savings Bank, as secured is limited to $700,000.00.[1]  The Defendant filed the Answer of Eastern Savings Bank, FSB, on February 4, 2010, asking the court to determine that its secured claim includes interest, expenses, and attorneys' fees above the $700,000.00 amount. Pursuant to the Pretrial Order entered on March 23, 2010, the parties waived oral argument and submitted the issue to the court on the record and briefs.

The facts and documents necessary for the resolution of this adversary proceeding are before the court through the Amended Stipulations of Undisputed Facts (Stipulations) filed by the parties on March 19, 2010, which includes the following stipulated Exhibits:  (A) Promissory Note dated June 17, 1999, executed by Longer Enterprises, Inc. in favor of the Defendant in the principal amount of $3,750,000.00; (B) Guaranty Agreement dated June 17, 1999, executed by the Debtor, guaranteeing the June 17, 1999 Longer Enterprises Note; (C) Modification Agreement dated May 28, 2002, between the Defendant, as "Lender," Longer Enterprises, Inc. and Zeta Enterprises, Inc., as "Borrower," and the Debtor, as "Guarantor;" (D) Deed of Trust recorded May 31, 2002, executed by the Debtor on May 28, 2002, to Joseph H. Huie, Trustee, for the benefit of the Defendant; (E) Modification Agreement dated August 31, 2004, between the Defendant, as "Lender," Longer Enterprises, Inc., as "Borrower," and the Debtor, as "Guarantor;" and (F) Modification Agreement Memorandum dated August 31, 2004, between the Defendant, as "Lender," Longer Enterprises, Inc., as "Borrower," and the Debtor, as "Guarantor."

---

[1] The Defendant filed a Proof of Claim on November 9, 2009, in the amount of $4,164,129.09. Of this amount, $866,504.56 is designated as secured by real estate.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(B) (2006).

## I

On June 17, 1999, Longer Enterprises, Inc., through its president, the Debtor, executed a Promissory Note in the amount of $3,750,000.00 in favor of the Defendant, secured by a Purchase Money Deed of Trust, Assignment of Rents, and Security Agreement (Longer Enterprises Note). STIP. EX. A.  The Debtor personally guaranteed the Longer Enterprises Note by her execution of a Guaranty Agreement.  STIP. EX. B.

On May 28, 2002, the Defendant, Longer Enterprises, Inc., Zeta Enterprises, Inc., and the Debtor modified the June 17, 1999 Longer Enterprises Note pursuant to a Modification Agreement. STIP. EX. C.  As recited therein, as of May 28, 2002, the balance owing on the Longer Enterprises Note was $3,824,729.70, which was comprised of $3,699,345.63 in principal, accrued interest in the amount of $32,369.27, late charges in the amount of $93,004.80, and a miscellaneous payment due of $10.00.  STIP. EX. C at ¶ 2.  Included among the revised terms were the requirements that Longer Enterprises, Inc. make a $200,000.00 principal curtailment payment before July 1, 2004, and that the Debtor provide, "[a]s additional collateral for repayment of the Longer [Enterprises] Note," a deed of trust granting the Defendant a lien against her residence located at 3411 Tooles Bend Road, Knoxville, Tennessee (the Tooles Bend Road Residence) in the amount of $200,000.00.  STIP. EX. C at ¶¶ 5-6.  The Debtor executed the Deed of Trust on May 28, 2002, granting the Plaintiff a lien on the Tooles Bend Road Residence, which was recorded with the Register of Deeds for Knox County on May 31, 2002.  STIP. EX. D.

On August 31, 2004, the Defendant entered into a second Modification Agreement with Longer Enterprises, Inc. and the Debtor which, among other things, extended the maturity date of the June 17, 1999 Longer Enterprises Note to July 1, 2005, provided for an advance of additional funds in the amount of $454,952.66 to pay delinquent property taxes due on property securing the Longer Enterprises Note known as Howard Johnson Plaza, 7621 Kingston Pike, Knoxville, Tennessee, and increased the amount of the Debtor's guaranty secured by the Tooles Bend Road Residence. STIP. EX. E. The Modification Agreement provides, in material part:

> 3. As of August 31, 2004, the balance on the Longer [Enterprises] Note is Three Million Four Hundred Seventy Two Thousand Five Hundred Fifty Two Dollars and fifty-eight cents ($3,472,552.58), comprised of principal in the amount of $3,017,599.92, interest in the amount of $54,568.27, late charges in the amount of $36,044.24, City real property taxes advanced in the amount of $220,860.64, County real property taxes advanced in the amount of $92,164.51, an extension fee advanced in the amount of $34,381.71, lender's title policy endorsement premium relative to the Howard Johnson Plaza Property of $2,588.00, lender's title policy premium relative to the Residence of $1,894.50, closing fee due Tennessee Valley Title Ins. Co. of $300.00, attorney's fees due Tennessee Valley Title Ins. Co. of $550.00, mortgage taxes of $515.20, courier fee of $25.00, and recording fees of $28.00, and a miscellaneous balance due in the amount of $11,032.59.
>
> 4. The maximum amount secured by the Residential Deed of Trust [the Tooles Bend Road Residence] is hereby increased to Seven Hundred Thousand Dollars and no cents ($700,000.00).
>
> . . . .
>
> 8. Effective October 1, 2004, and continuing monthly on the first day of each month thereafter until the balance is paid in full, the monthly principal and interest payment on the Longer [Enterprises] Note shall be Thirty Two Thousand Seven Hundred Eighty Seven Dollars and twenty-one cents ($32,787.21).
>
> . . . .

4

> 13. Lender, Borrower and Guarantor agree that, except as modified herein, the terms and provisions of the original Longer [Enterprises] Note remain unchanged and of full force and effect.

STIP. EX. E. The August 31, 2004 Modification Agreement was memorialized in a Modification Agreement Memorandum executed by the Defendant, as "Lender," Longer Enterprises, Inc., as "Borrower," and the Debtor, as "Guarantor," and recorded with the Register of Deeds for Knox County on September 1, 2004. STIP. EX. F. All of the loan documents referenced herein were prepared and drafted by the Defendant and/or its attorneys. STIPS. at ¶ 2.

The Debtor filed the Voluntary Petition commencing her case under Chapter 11 of the Bankruptcy Code on August 18, 2009. The Plaintiff does not dispute that the Defendant is a secured creditor of the Debtor, holding a claim in the amount of not less than $700,000.00 secured by a lien upon the Tooles Bend Road Residence. Neither does the Plaintiff dispute that the Defendant has accurately calculated pro-rated interest, expenses, attorneys' fees totaling $166,504.56 which it contends gives it an allowable secured claim of $866,504.56. STIPS. at ¶¶ 3-5.

On January 11, 2010, the Plaintiff filed the Complaint commencing this adversary proceeding seeking a determination that the Defendant's claim secured by the Tooles Bend Road Residence is limited to $700,000.00. Pursuant to the Pretrial Order entered on March 23, 2010, the issue the court is called upon to resolve is whether the amount of the Defendant's claim filed as secured on November 2, 2009, in the amount of $866,504.56, should be allowed as filed or limited to $700,000.00. The Plaintiff contends that the Defendant's secured claim is limited to $700,000.00 based upon paragraph 4 of the August 31, 2004 Modification Agreement which provides that "[t]he maximum amount secured by the Residential Deed of Trust [the Tooles Bend Road Residence] is

hereby increased to Seven Hundred Thousand Dollars and no cents ($700,000.00)." STIP. EX. E at ¶ 4; STIP. EX. F at ¶ 4. On the other side, the Defendant argues that the August 31, 2004 Modification Agreement, memorialized by the Modification Agreement Memorandum, modified the May 28, 2002 Modification Agreement, which required a $200,000.00 principal curtailment payment and through which the Debtor granted the Defendant a $200,000.00 lien on her residence notwithstanding the assessment of interest or attorneys' fees.

## II

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002); *Smith v. Feltus*, 2001 Tenn. App. LEXIS 297, at *18, 2001 WL 432497, at *6 (Tenn. Ct. App. Apr. 23, 2001) ("When interpreting a contract, the court 'does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written.'") (quoting *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)). Accordingly, "[w]hen resolving disputes concerning contract interpretation, [the court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

> The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. In the case of written contracts, these intentions are reflected in the contract itself. Thus, the search for the contracting parties' intent should focus on (1) the four corners of the contract, (2) the circumstances in which the contract was made, and (3) the parties' actions in carrying out the contract.

> In the absence of fraud or mistake, courts should construe contracts as written. The courts should accord contractual terms their natural and ordinary meaning, and should construe them in the context of the entire contract. The courts should also avoid strained constructions that create ambiguities where none exist.
>
> The courts may not make a new contract for parties who have spoken for themselves, and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise. Thus, when called upon to interpret a contract, the courts may not favor either party. However, when a contract contains ambiguous provisions, those provisions will be construed against the party responsible for drafting them.

*Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 681-82 (Tenn. Ct. App. 1999) (internal citations omitted).

Here, the terms of the August 31, 2004 Modification Agreement and the Modification Agreement Memorandum are not ambiguous. Both documents, which were drafted by the Defendant, unambiguously provide that "[t]he ***maximum*** amount secured by the Residential Deed of Trust [the Tooles Bend Road Residence] is hereby increased to Seven Hundred Thousand Dollars and no cents ($700,000.00)." STIP. EX. E at ¶ 4; STIP. EX. F at ¶ 4 (emphasis added). Reading the documents as written, given the plain and ordinary meanings of the words chosen, lends itself to one logical interpretation: the maximum amount of Defendant's lien encumbering the Debtor's Tooles Bend Road Residence is $700,000.00, irrespective of whether that figure is simply principal or also includes interest and attorneys' fees, and the Defendant's secured claim is limited to that amount. Had the parties intended for the $700,000.00 to be inclusive of principal only, they could have easily so provided, as they had previously done in the May 28, 2002 Modification Agreement by requiring Longer Enterprises, Inc. to make a $200,000.00 principal curtailment payment. *See* STIP. EX. C at ¶ 5. There is no limiting language, however, even though both modification documents make

references to a breakdown of principal and interest in other clauses. *See* STIP. EX. E at ¶¶ 3, 7-8; STIP EX. F at ¶¶ 3, 7-8.

The Defendant argues that the August 31, 2004 Modification Agreement incorporated into its terms the May 28, 2002 Modification Agreement and the underlying Longer Enterprises Note and Guaranty Agreement, which provided for the $200,000.00 principal curtailment payment, and that the increase to $700,000.00 was intended as security for another principal curtailment payment, with interest, expenses, and attorneys' fees to be assessed if not paid. The court disagrees. While that might have been true for the initial May 28, 2002 modification of the Longer Enterprises Note, the same cannot be said for the August 31, 2004 modification. The August 31, 2004 Modification Agreement is unequivocal – "[t]he maximum amount secured by the Residential Deed of Trust [the Tooles Bend Road Residence] is hereby increased to Seven Hundred Thousand Dollars and no Cents ($700,000.00)." There is no mention of a $700,000.00 principal curtailment payment. Instead, the principal curtailment payment on the entire loan owed by Longer Enterprises, Inc. was raised to $2,900,000.00, and there is no longer a reference to release of the Residential Deed of Trust upon receipt of payment. *See* STIP. EX. E.

Although the August 31, 2004 Modification Agreement and the Modification Agreement Memorandum provide that the parties "agree that, except as modified herein, the terms and provisions of the original Longer [Enterprises] Note remain unchanged and of full force and effect," the court finds that, based upon the four corners of the agreements themselves, the amount of the lien encumbering the Tooles Bend Road Residence was expressly limited to $700,000.00. Accordingly,

8

the secured portion of the Defendant's claim number 9, filed on November 2, 2009, is limited to $700,000.00.

A judgment consistent with this Memorandum shall be entered.

FILED: June 17, 2010

                                       BY THE COURT

                                       */s/ RICHARD STAIR, JR.*

                                       RICHARD STAIR, JR.
                                       UNITED STATES BANKRUPTCY JUDGE